## H. L. ELLIS v. THE STATE.

1. EVIDENCE — NEW TRIAL.— See this case for evidence held insufficient to sustain a verdict of conviction for theft, wherefore a new trial should have been granted.        •
2. SAME.— If the testimony of a co-defendant be material and has become available by his acquittal, the want of it may constitute cause for a new trial.

APPEAL from the District Court of Uralde.    Tried below before the Hon. T. M. PASCHAL.

The indictment charged the appellant and one Dimmick jointly with the theft of 60 head of sheep. The trial of the appellant resulted in his conviction as charged, but found that he voluntarily returned the property within a reasonable time, and before the institution of this prosecution, and assessed his fine at $25.

William Lewis testified, for the State, that about the 4th or 5th of April, 1879, he counted a flock of sheep which he owned, and found that 71 head of mutton sheep were missing. On April 7th he went to the sheep-camp of Dimmick, the co-defendant of the appellant, about ten miles distant from the witness' sheep-camp, and was by Dimmick shown through his flocks, but found none of the missing sheep. He asked Dimmick where his (Dimmick's) yearling sheep were, and was told by him that he had sold them. On Turkey creek witness was told by Cline that the yearling sheep were in the charge of Ellis at the Gatto Ranch, five or six miles distant from Dimmick's. The witness went there but failed to find his sheep. On the next day the witness again went to Dimmick's and found him and a Mexican removing their camp. Dimmick told the witness that Ellis would let no stray sheep into his flock and that it was of no use to search for the missing sheep there. Afterwards, but during the same day, Dimmick told the witness that in his flock were two black yearling sheep which belonged to witness, but which, witness having overlooked them, he said nothing about. Witness told him that he was not looking for black yearlings, but for 71 head of mutton sheep. On the next day the witness went to the camp to which Dimmick had removed, and was there told by him that Ellis and his flock could be found at the Horrace Ranch on the Nueces. Witness asked Dimmick to go with him and assist in finding the sheep, but Dimmick, pleading press of time, declined. The witness reached Ellis' late that evening, and was informed by him that he

had found the lost sheep, in two bunches, on his way from Turkey creek. The witness asked why he had not told Dimmick, so as to save the witness so much hard riding. He replied that he had not seen Dimmick, but that on reaching Horrace's Ranch he had dispatched a note to witness by one of Horrace's boys, informing him that he had found the sheep. The witness could not identify the note shown him, as he was unable to read writing. He found sixty head of sheep where Ellis had penned them at Horrace's Ranch. Had never found the others. Those found were worth $2 per head,— in the aggregate $100 at least.

Cross-examined, the witness said that he had a herder in charge of his sheep when the ones lost were missed. He had often known sheep to stray off when in charge of herders. He did not know how these got away. The cross-examination developed nothing else material to the case. On re-direct examination, the witness stated that he did not know that his sheep were in Ellis' flock, but he intended to examine every flock in the country until he found them. Ellis set up no claim to the sheep, and had them separated from his own flock and in a separate pen when witness reached the Horrace Ranch, where they were. Ellis was without water or provision, and the witness divided his with him. On the next morning, when witness was preparing to leave, he recognized another of his sheep in Ellis' flock, and pointed it out. Ellis went into the flock; caught and delivered it to the witness. He set up no claim whatever to the sheep. The sheep lost were marked with smooth crop off of left ear.

The defendant acknowledged the writing of a note which read as follows:

"March 10th, 1879.

MR. LEWIS, Sir:— Yesterday, as I came from Turkey creek, there was two small bunches of sheep run into my

flock, one in the forenoon, and one in the afternoon, about 2 1-2 miles this side of the creek. Not knowing the sheep and seeing they had the scab very bad, I put my sheep in the shade and went back to get the advice of Mr. Dimmick what was best to do with them. He asked me. the mark of the sheep; I told him; he said they must be yours, and to bring them on and send you word where they were.

I remain yours,

H. L. ELLIS."

The witness stated that his wife handed him this note, saying that she had received it by the hands of one of the Horrace boys.

H. C. Griner testified for the State that he went to Dimmick's camp on the 2d or 3d of April, 1879, to hire him to go to San Felipe and dip sheep for his (witness') brother. *En route* he passed Dimmick's flock of sheep, in charge of Ellis, and noticed in the flock some 20 or 30 " scabby " sheep, marked with a smooth crop off one ear. Witness thought then that they belonged to Mr. Weymiller, as he marked with a crop off one ear, but said nothing to Ellis about his belief. He remarked to Ellis, " Dimmick told me you had no scabby sheep in your flock," and Ellis replied, " yes, we have a few." Presently Dimmick rode up, and he and witness went to Dimmick's camp and got dinner. Witness remained until late in the evening, but said nothing about seeing stray sheep in the herd. Witness knew Dimmick's sheep as well as he knew his own. Those in the flock spoken of were of a finer grade than Dimmick owned.

Cross-examined, the witness stated that he did not know that the sheep he saw in the flock were the same that Lewis found in the Ellis flock at Horrace's Ranch. Had not seen Dimmick's sheep before since August, 1878.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

White, P. J.   As shown by the record the evidence is, in our opinion, insufficient to support the verdict and judgment of conviction; and in view of the meagerness of the inculpatory facts the court should have granted a new trial in order that appellant might have had the benefit of the testimony of H. M. Dimmick, who had been jointly indicted with him, but who had been tried and acquitted subsequent to the conviction of appellant.

*Reversed and remanded.*